IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION



**FILED**

JAN 1 6 2018

Clerk, U S District Court
District Of Montana
Billings

UNITED STATES OF AMERICA,

    Plaintiff,

vs.

WOODY'S TRUCKING, LLC, and
DONALD E. WOOD, JR.,

              Defendants.

CR 17-138-BLG-SPW

ORDER

Before the Court are five motions to dismiss the Indictment filed by

Defendants Woody's Trucking, LLC, and Donald E. Wood, Jr. (Docs. 27, 29, 35,

37, 39). For the foregoing reasons, the motions are denied.

## I.    Background facts as alleged in Indictment

Woody's Trucking is a commercial transportation business managed and

owned by Donald E. Wood, Jr.. (Doc. 1 at 3). In 2004, Woody's Trucking

obtained a commercial insurance policy from Great West Casualty Company.

(Doc. 1 at 4). The Great West policy renewed annually. (Doc. 1 at 4). Prior to

each renewal, Woody's Trucking submitted to Great West an insurance application

which listed the commodities transported by Woody's Trucking and whether any

were hazardous. (Doc. 1 at 4).

In February 2012, Woody's Trucking entered into an agreement with Saddle Butte Pipeline, LLC, to transport natural gas condensate. (Doc. 1 at 12-13). At the same time, Woody's Trucking obtained an endorsement from Great West to add Saddle Butte as an insured party to the existing policy. (Doc. 1 at 13). Woody's Trucking did not disclose to Great West that it had begun transporting natural gas condensate. (Doc. 1 at 13). In October 2012, Woody's Trucking submitted its annual insurance application to Great West. (Doc. 1 at 14). The October 2012 application stated Woody's Trucking transported "KCL Water," "100%." (Doc. 1 at 14). The October 2012 application did not state Woody's Trucking transported hazardous materials. (Doc. 1 at 14). Based upon the October 2012 application, Great West renewed Woody's Trucking's policy. (Doc. 1 at 14).

From February 2012 through December 29, 2012, Woody's Trucking transported natural gas condensate for Saddle Butte. (Doc. 1 at 14-15). Woody's Trucking did not receive and/or prepare hazardous material shipping papers, hazardous material placards, or emergency response information for any of the transports. (Doc. 1 at 15-16). Donald E. Wood, Jr. and conspirators instead prepared Bills of Lading that falsely described the materials transported as "slop oil and water." (Doc. 1 at 16).

On December 29, 2012, an explosion occurred while workers unloaded natural gas condensate transported by Woody's Trucking. (Doc. 1 at 16-17).

Between December 29, 2012, and January 8, 2013, a person, at the direction of Woody's Trucking, prepared a Bill of Lading that falsely described the contents of the December 29, 2012, transport as "slop oil and water from condensate tanks." (Doc. 1 at 17). On January 9, 2013, the person, at the direction of Woody's Trucking, placed the false Bill of Lading into the cab of the truck that made the December 29, 2012, transport. (Doc. 1 at 17).

On December 31, 2012, Woody's Trucking faxed a claim to Great West for repairs to the truck involved in the explosion. (Doc. 1 at 20-21). On January 17, 2013, in response to an OSHA investigation, Woody's Trucking faxed a copy of the false bill of lading to OSHA. (Doc. 1 at 18, 21-22). On October 24, 2014, in response to a request by Great West concerning the explosion, Woody's Trucking and conspirators mailed a copy of the false bill of lading to Great West. (Doc. 1 at 18, 22). On February 28, 2015, Woody's Trucking emailed to its insurance agent and Great West a complaint and summons filed against Woody's Trucking by workers injured in the explosion. (Doc. 1 at 18-19, 22-23).

Based on the above facts, the indictment charged Woody's Trucking and Donald E. Wood, Jr. with fourteen counts. Count one alleges the Defendants, and other known and unknown to the grand jury, knowingly conspired to: (a) defraud Great West by wire fraud and mail fraud, (b) defraud the United States by deceitfully obstructing the legitimate functions of the DOT and OSHA in enforcing

federal law, (c) recklessly violate hazardous materials regulations, and (d) alter a tangible object with the intent to obstruct the OSHA investigation. Counts two, three, and five allege the Defendants, for the purpose of executing a scheme to defraud, transmitted a wire communication in interstate commerce. Count five alleges the Defendants, for the purpose of executing a scheme to defraud, caused a matter to be deposited, sent, or delivered by United States mail. Counts six, seven, eight, and nine allege the Defendants recklessly violated Hazmat regulations by transporting and causing to be transported a hazardous material without required placards. Counts ten, eleven, twelve, and thirteen allege the Defendants recklessly violated Hazmat regulations by transporting and causing to be transported a hazardous material without required shipping papers. Count fourteen alleges the Defendants knowingly altered, destroyed, and concealed a document with the intent to impede, obstruct, and influence the investigation and proper administration of a matter within the jurisdiction of OSHA.

## II.    Law

An indictment must be "a plain, concise and definite written statement of the essential facts constituting the offense charged." Fed. R. Crim. P. 7(c)(1). To be sufficient, an indictment must (1) contain the elements of the offense charged and fairly inform a defendant of the charge against him, and (2) enable the defendant to plead an acquittal or conviction in bar of future prosecutions for the same offense.

*United States v. Lazarenko*, 564 F.3d 1026, 1033 (9th Cir. 2009). An indictment should be read in its entirety, construed according to common sense, and interpreted to include facts which are necessarily implied. *Lazarenko*, 564 F.3d at 1033. An indictment which tracks the words of the statute charging the offense is sufficient so long as the words unambiguously set forth all elements necessary to constitute the offense. *United States v. Givens*, 767 F.2d 574, 584 (9th Cir. 1985). A motion to dismiss the indictment cannot be used as a device for a summary trial of the evidence. *United States v. Boren*, 278 F.3d 911, 914 (9th Cir. 2002). Ultimate issues of guilt or innocence are the province of the jury. *Boren*, 278 F.3d at 914.

## III.  Discussion

In their five motions, the Defendants advance several arguments, with some overlap, to dismiss each count in the Indictment. The Court addresses the arguments made against each count in turn.

### A.  Counts 2-5: The mail and wire frauds

The Defendants argue the mail and wire fraud counts should be dismissed because they fail to sufficiently allege a crime. (Doc. 27).

Wire and mail fraud have four elements: (1) a scheme to defraud, (2) the statements made and facts omitted as part of the scheme were material, (3) use of the wires, or United States mail, in furtherance of the scheme, and (4) a specific

intent to deceive or defraud. *United States v. Woods*, 335 F.3d 993, 997-999 (9th Cir. 2003) (citing 18 U.S.C. §§ 1341, 1343). In *Cleveland v. United States*, the Supreme Court added the further requirement that the object of the scheme must be the money or property of a victim. 531 U.S. 12, 26-27 (2000).

The indictment sufficiently alleges mail and wire fraud because it unambiguously sets forth the elements and facts constituting the crimes. Common to all of the mail and wire fraud counts, the Indictment alleges the Defendants "knowingly devised and intended to devise a scheme and artifice to defraud Great West, OSHA, and others, and for obtaining money by means of material false and fraudulent pretenses and representations." (Doc. 1 at 19-20). The Indictment continues that:

> it was part of the scheme that the defendants made or caused material false misrepresentations to be made to its insurer, Great West, and to government agencies including OSHA, and others, that Woody's Trucking was transporting "slop oil and water," and did not know that it was transporting hazardous materials during the December 29, 2012 shipment, in order to avoid liability and to obtain insurance coverage of and insurance defense against claims made against Woody's Trucking arising from the explosion during the offloading of that shipment, when in fact, as the defendants knew, Woody's Trucking was transporting a shipment of hazardous natural gas condensate.

(Doc. 1 at 20). It was also part of the scheme that the defendants requested Great West to provide insurance coverage for the lawsuit filed by the injured workers and pay for repairs to the damaged truck. (Doc. 1 at 20).

Thus, common to all counts, the indictment alleges the scheme to defraud was the scheme to fraudulently obtain insurance coverage, defense, and payouts; the material statements and omissions were the statements that Woody's Trucking was transporting "slop oil and water" and omissions it was actually transporting natural gas condensate; the Defendants specifically intended to defraud Great West; and the object of the scheme was Great West's money.

The remaining element, the use of wires or mail in furtherance of the scheme, is alleged specific to each count. Count two concerns the fax to Great West for repairs. It alleges the Defendants "transmitted by means of wire communication in interstate commerce" a fax to Great West "for the purpose of executing and attempting to execute the scheme." (Doc. 1 at 21). Count three concerns the fax of the bill of lading to OSHA. It alleges the Defendants "transmitted by means of wire communication in interstate commerce" a fax to OSHA "for the purpose of executing and attempting to execute the scheme." (Doc. 1 at 21). Count four concerns the mailing of the bill of lading to Great West. It alleges the Defendants "caused to be deposited, and to be sent or delivered by United States mail" a copy of the false bill of lading "for the purpose of executing and attempting to execute the scheme." (Doc. 1 at 21). Count five concerns the email to Great West for coverage for the lawsuit filed by the injured workers. It alleges the Defendants "transmitted by means of wire communication in interstate

commerce" an email to Great West "for the purpose of executing and attempting to execute the scheme." (Doc. 1 at 22-23).

The Defendants arguments are centered largely on whether the facts contained in the indictment support conviction, such as whether the wiring or mailing of the bill of lading was in furtherance of the scheme. However, such questions are the province of the jury. *Boren*, 278 F.3d at 914. All that is required of an indictment is that it contain the elements of the offense charged and fairly inform the defendant of the charge against him. *Lazarenko*, 564 F.3d at 1033. The indictment accomplishes that goal because it unambiguously sets forth the facts and elements constituting wire and mail fraud, as articulated in *Woods* and *Cleveland.* The motion to dismiss is denied.

## B.    Counts 6-13: the reckless violations of Hazmat regulations

The Defendants argue counts 6-13 should be dismissed for two reasons. First, they argue they could not have recklessly violated Hazmat regulations because natural gas condensate is not a listed hazardous material. Second, they argue the indictment is insufficient because it does not allege they violated Hazmat regulations with deliberate indifference or conscious disregard.

The Hazardous Materials Transportation Act (Hazmat Law) was enacted to "protect against the risks to life, property, and the environment that are inherent in the transportation of hazardous materials in intrastate, interstate, and foreign

commerce." 49 U.S.C. § 5101. The Hazmat Law grants the Secretary of Transportation the power to promulgate regulations for the safe transportation of hazardous materials. 49 U.S.C. § 5103(b). The Hazmat Law also grants the Secretary the power to designate materials, or a group or class of materials, as hazardous. 49 U.S.C. § 5102(a); 49 U.S.C. 5103(a). A material designated as hazardous is subject to a number of regulations when it is being transported in commerce. *See* 49 C.F.R. 171 et seq. Under the Hazmat Law, it is a crime to recklessly violate a regulation issued by the Secretary of Transportation. 49 U.S.C. § 5124. Reckless means a deliberate indifference or conscious disregard to the consequences of one's conduct. 49 U.S.C. § 5124(d).

Pursuant to 49 C.F.R. § 171.8, materials are designated hazardous if they are listed in the "Hazardous Materials Table" or if they "meet the defining criteria for hazard classes and divisions." A material is designated as a Class 3 hazardous material if it is a flammable liquid with a flash point of not more than 140°F. 49 C.F.R. § 173.120(a).

The Defendants argue natural gas condensate is not listed in the Hazardous Materials Table and is therefore not a hazardous material subject to regulation. The Defendants are correct natural gas condensate is not listed in the Table. However, the Defendants are incorrect that only materials listed by name in the Table are designated hazardous. 49 U.S.C. § 5103(a) plainly empowers the

Secretary to designate materials, or *classes of materials*, as hazardous.  Under 49

C.F.R. § 171.8, the Secretary has designated certain materials as hazardous by

listing them by name in the Table.  The Secretary has designated other materials as

hazardous by creating defined classes of hazardous materials.  The Table itself

clearly states that some designated hazardous materials may not appear in the

Table by name, in which case, the material should be identified based on whether it

meets specific hazard class criteria.  *See* 49 C.F.R. § 172.101(c)(12)(ii) ("If an

appropriate technical name is not shown in the Table, selection of a proper

shipping name shall be made from the generic or n.o.s. [Not Otherwise Specified]

descriptions corresponding to the specific *hazard class*, packing group, hazard

zone, or subsidiary hazard, if any, for the material.") (emphasis added).  Thus,

materials that meet the defined criteria of a specific hazard class are designated as

hazardous material, even if the material does not appear in the Table by name.

Here, the indictment alleges natural gas condensate is a designated

hazardous material because it is a Class 3 flammable liquid.  (Doc. 1 at 7).  The

indictment further alleges that because natural gas condensate is not listed by name

in the Table, its appropriate shipping name is "Hydrocarbons, liquid, n.o.s." (Doc.

1 at 7).  The indictment further alleges the Defendants recklessly transported

natural gas condensate without the required information on the shipping paper and

without the required placards on the trucks.  (Doc. 1 at 7, 23-25) (citing 49 C.F.R.

§§ 172.201(a)(3), 172.202(a)(1-4) and 49 C.F.R. 172 Part G, 49 C.F.R. §§
172.500, 172.504 – Table 2, 172.506, 172.519, 172.542 and 49 C.F.R. 172 Subpart
F). The indictment does not allege the defendants acted with deliberate
indifference or conscious disregard.

The indictment is sufficient because it unambiguously sets forth the facts
and elements constituting the reckless violation of Hazmat regulations. The
indictment is not required to allege deliberate indifference or conscious disregard.
The allegation that the Defendants acted recklessly is sufficient because reckless is
the language used in the statute. *Givens*, 767 F.2d at 586. The motion to dismiss is
denied.

### C.   Count 1: the conspiracy

The Defendants argue the conspiracy count should be dismissed because the
indictment does not allege two identified people conspired to commit a crime.

Under 18 U.S.C. § 371, a conspiracy exists when "two or more persons
conspire either to commit any offense against the United States, or to defraud the
United States, or any agency thereof in any manner or for any purpose, and one or
more of such persons do any act to effect the object of the conspiracy." An
indictment that alleges a conspiracy between a defendant and "others both known
and unknown to the grand jury," sufficiently alleges a conspiracy between two or
more persons. *United States v. Thomas*, 348 F.3d 78, 84 (5th Cir. 2003); *Rogers v.*

*United States*, 340 U.S. 367, 375 (1950) ("[A]t least two persons are required to constitute a conspiracy, but the identity of the other members of the conspiracy is not needed, inasmuch as one person can be convicted of conspiring with persons whose names are unknown.").

Here, the indictment alleges the Defendants and "others known and unknown to the grand jury," conspired to defraud Great West, to recklessly violate the Hazmat regulations, to defraud the United States, and to obstruct justice. (Doc. 1 at 9). The indictment sufficiently alleges a conspiracy because it tracks the conspiracy statute. *Givens*, 767 F.2d at 586. The indictment is not required to specifically name the other persons in the conspiracy. *Thomas*, 348 F.3d at 84; *Rogers*, 340 U.S. at 375.

The Defendants additionally argue the conspiracy count should be dismissed because Counts 2-13 were not sufficiently pled in the indictment and so cannot serve as the underlying crimes for the conspiracy. The Court rejects the Defendants' argument because it has already concluded Counts 2-13 were sufficiently alleged in the indictment. The motion to dismiss is denied.

## D.    Count 14: obstruction of justice

The Defendants argue the obstruction of justice count should be dismissed because the indictment does not sufficiently allege an underlying crime and therefore there was no investigation to obstruct.

12

Under 18 U.S.C. § 1519, a person obstructs justice when he "knowingly alters, destroys, mutilates, conceals, covers up, falsifies, or makes a false entry in any record, document, or tangible object with the intent to impede, obstruct, or influence the investigation or proper administration of any matter within the jurisdiction of any department or agency of the United States."

The Defendants arguments are without merit because obstruction of justice requires an investigation or administration of a matter, not an underlying crime. The indictment alleges the Defendants knowingly altered the bill of lading to contain false entries with the intent to impede, obstruct, and influence the OSHA investigation. (Doc. 1 at 25-26). The indictment sufficiently alleges obstruction of justice because it tracks the statutory language. *Givens*, 767 F.2d at 586. The motion to dismiss is denied.

### E. Counts 1-14

The Defendants argue the entire indictment should be dismissed because it is impermissibly vague. The Court rejects the Defendants' argument because it has already concluded the indictment sufficiently alleged Counts 1-14. The motion to dismiss is denied.

## IV. Conclusion

The Defendants' motions to dismiss (Docs. 27, 29, 35, 37, 39) are denied.

DATED this 16th day of January, 2018.

SUSAN P. WATTERS
United States District Judge