

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | CR 17-138-BLG-SPW |
| Plaintiff, | |
| vs. | ORDER |
| WOODY'S TRUCKING, LLC, and DONALD E. WOOD, JR., | |
| Defendants. | |

Before the Court are two motions to exclude evidence (Docs. 41 and 43) filed by Defendants Woody's Trucking and Donald E. Wood, Jr. For the foregoing reasons, the Court grants in part and denies in part the first motion and denies the second motion with leave to renew at trial.

I. **Facts as alleged in indictment**

Woody's Trucking is a commercial transportation business managed and owned by Donald E. Wood, Jr.. (Doc. 1 at 3). In 2004, Woody's Trucking obtained a commercial insurance policy from Great West Casualty Company. (Doc. 1 at 4). The Great West policy renewed annually. (Doc. 1 at 4). Prior to each renewal, Woody's Trucking submitted to Great West an insurance application

1

which listed the commodities transported by Woody's Trucking and whether any were hazardous. (Doc. 1 at 4).

In February 2012, Woody's Trucking entered into an agreement with Saddle Butte Pipeline, LLC, to transport natural gas condensate. (Doc. 1 at 12-13). At the same time, Woody's Trucking obtained an endorsement from Great West to add Saddle Butte as an insured party to the existing policy. (Doc. 1 at 13). Woody's Trucking did not disclose to Great West that it had begun transporting natural gas condensate. (Doc. 1 at 13). In October 2012, Woody's Trucking submitted its annual insurance application to Great West. (Doc. 1 at 14). The October 2012 application stated Woody's Trucking transported "KCL Water," "100%." (Doc. 1 at 14). The October 2012 application did not state Woody's Trucking transported hazardous materials. (Doc. 1 at 14). Based upon the October 2012 application, Great West renewed Woody's Trucking's policy. (Doc. 1 at 14).

From February 2012 through December 29, 2012, Woody's Trucking transported natural gas condensate for Saddle Butte. (Doc. 1 at 14-15). Woody's Trucking did not receive and/or prepare hazardous material shipping papers, hazardous material placards, or emergency response information for any of the transports. (Doc. 1 at 15-16). Donald E. Wood, Jr. and conspirators instead prepared Bills of Lading that falsely described the materials transported as "slop oil and water." (Doc. 1 at 16).

On December 29, 2012, an explosion occurred while workers unloaded natural gas condensate transported by Woody's Trucking. (Doc. 1 at 16-17). Between December 29, 2012, and January 8, 2013, a person, at the direction of Woody's Trucking, prepared a Bill of Lading that falsely described the contents of the December 29, 2012, transport as "slop oil and water from condensate tanks." (Doc. 1 at 17). On January 9, 2013, the person, at the direction of Woody's Trucking, placed the false Bill of Lading into the cab of the truck that made the December 29, 2012, transport. (Doc. 1 at 17).

On December 31, 2012, Woody's Trucking faxed a claim to Great West for repairs to the truck involved in the explosion. (Doc. 1 at 20-21). On January 17, 2013, in response to an OSHA investigation, Woody's Trucking faxed a copy of the false bill of lading to OSHA. (Doc. 1 at 18, 21-22). On October 24, 2014, in response to a request by Great West concerning the explosion, Woody's Trucking and conspirators mailed a copy of the false bill of lading to Great West. (Doc. 1 at 18, 22). On February 28, 2015, Woody's Trucking emailed to its insurance agent and Great West a complaint and summons filed against Woody's Trucking by workers injured in the explosion. (Doc. 1 at 18-19, 22-23).

Based on the above facts, the indictment charged Woody's Trucking and Donald E. Wood, Jr. with fourteen counts. Count one alleges the Defendants, and other known and unknown to the grand jury, knowingly conspired to: (a) defraud

Great West by wire fraud and mail fraud, (b) defraud the United States by deceitfully obstructing the legitimate functions of the DOT and OSHA in enforcing federal law, (c) recklessly violate hazardous materials regulations, and (d) alter a tangible object with the intent to obstruct the OSHA investigation. Counts two, three, and five allege the Defendants, for the purpose of executing a scheme to defraud, transmitted a wire communication in interstate commerce. Count five alleges the Defendants, for the purpose of executing a scheme to defraud, caused a matter to be deposited, sent, or delivered by United States mail. Counts six, seven, eight, and nine allege the Defendants recklessly violated Hazmat regulations by transporting and causing to be transported a hazardous material without required placards. Counts ten, eleven, twelve, and thirteen allege the Defendants recklessly violated Hazmat regulations by transporting and causing to be transported a hazardous material without required shipping papers. Count fourteen alleges the Defendants knowingly altered, destroyed, and concealed a document with the intent to impede, obstruct, and influence the investigation and proper administration of a matter within the jurisdiction of OSHA.

**II. Law**

Motions in limine are procedural devices to obtain an early and preliminary ruling on the admissibility of evidence. Judges have broad discretion when ruling on motions in limine. *Jenkins v. Chrysler Motors Corp.*, 316 F.3d 663, 664 (7th

Cir. 2002). A motion in limine should not be used to resolve factual disputes or weigh evidence. *C & E Services, Inc., v. Ashland Inc.*, 539 F.Supp.2d 316, 323 (D.D.C. 2008). To exclude evidence on a motion in limine "the evidence must be inadmissible on all potential grounds." *Ind. Ins. Co. v. K-Mart Corp.*, 326 F.Supp.2d 844, 846 (N.D. Ohio 2004). Courts have wide discretion in considering and ruling on motions in limine. *See Luce v. U.S.*, 469 U.S. 38, 41 n.4 (1984).

## III. Discussion

The Defendants filed two motions to exclude evidence. The first motion concerns the admissibility of evidence under Rules 401, 402, and 403. The second motion concerns the admissibility of evidence under Rule 802 and the Confrontation Clause.

### A. Motion to exclude under Rules 401, 402, and 403 (Doc. 41)

Only relevant evidence is admissible. Fed. R. Evid. 402. Evidence is relevant if it has any tendency to make a fact more or less probable than it would be without the evidence and the fact is of consequence in determining the action. Fed. R. Evid. 401(a-b). Relevant evidence may be excluded if its probative value is substantially outweighed by, among other things, unfair prejudice. Fed. R. Evid. 403. The Rule 403 balancing inquiry is made on a case-by-case determination, requiring an examination of the surrounding facts, circumstances, and issues.

*United States v. Lloyd*, 807 F.3d 1128, 1152 (9th Cir. 2015). A district court's Rule 403 determination is subject to great deference. *Lloyd*, 807 F.3d at 1152.

The Defendants argue three pieces of evidence are inadmissible as irrelevant and unfairly prejudicial: (1) evidence that the Defendants transported natural gas condensate on sixteen occasions from February 2012 through December 2012; (2) evidence that the Defendants falsified a bill of lading and placed it in the truck involved in the explosion; and (3) evidence that workers were injured in the explosion and that insurance payments were made in connection to the explosion.

### 1. Evidence the Defendants transported natural gas condensate on sixteen occasions from February 2012 through December 2012

The Defendants offer several reasons why evidence of the shipments are irrelevant and unfairly prejudicial. They argue the government has no analyses that show fifteen of the shipments contained natural gas condensate; natural gas condensate is not a hazardous material subject to regulation; the sample taken from the truck involved in the explosion was contaminated; and the shipments are too remote in time.

Whether the Defendants transported natural gas condensate is the crux of the case. All fourteen counts are premised on the alleged fact that the Defendants were transporting natural gas condensate. Evidence that tends to prove the Defendants were transporting natural gas condensate is therefore relevant. To the extent the

Defendants argue the evidence is inadmissible under Rule 402, the motion is denied.

Turning to the Defendants' Rule 403 arguments, first, an expert analysis of the each shipment is not necessarily required to prove the shipment contained natural gas condensate. Courts have long upheld drug offense convictions where the substances were never analyzed but sufficient circumstantial evidence proved the substances were illegal. *See United States v. Walters*, 904 F.2d 765, 770 (1st Cir. 1990) ("[S]cientific analysis or expert testimony is not required to prove the illicit nature of a substance."); *United States v. Agueci*, 310 F.2d 817, 828-829 (2nd Cir. 1962) (sufficient circumstantial evidence to conclude substance contained in five shipments was heroin); *see also United States v. Bryce*, 208 F.3d 346, 354 (2nd Cir. 1999) ("[W]e decline to give a checklist or formula for sufficiency. A defendant may be convicted of narcotics possession if some evidence—direct, circumstantial or otherwise—establishes the defendant's possession of the illegal substance."). Here, the government has scientific analysis that allegedly shows the sixteenth shipment—the one involved in the explosion—was natural gas condensate. The government apparently also has other evidence, although not scientific, that the other fifteen shipments contained natural gas condensate. The analysis of the sixteenth shipment adds a layer of reliability to any unscientific

direct and/or circumstantial evidence of the contents of the prior fifteen shipments. Under the balance of Rule 403, the evidence is not unfairly prejudicial.

Concerning the Defendants' second argument, in its order denying the five motions to dismiss the indictment, the Court explained at length that the indictment sufficiently alleged natural gas condensate is a hazardous material subject to regulation because it is allegedly a Class 3 flammable liquid. Whether the government can prove natural gas condensate is a Class 3 flammable liquid is a question of fact for the jury. Evidence that the Defendants were shipping natural gas condensate is therefore relevant and probative.

Concerning the Defendants' third argument, they argue the sample taken from the truck involved in the explosion was contaminated. The Defendants do not argue the methodology of the analysis performed on the sample was unreliable. Potential contamination of the sample is an issue for cross-examination, not grounds for exclusion. *See United v. Chischilly*, 30 F.3d 1144, 1154 (9th Cir. 1994) ("The impact of imperfectly conducted laboratory procedures might therefore be approached more properly as an issue not going to the admissibility, but to the weight of the . . . evidence."). The analysis of the sample taken from the truck involved in the explosion is highly probative of whether the Defendants were transporting natural gas condensate. Any prejudice resulting from the sample is

outweighed by its probative value and is more appropriately addressed during cross-examination.

Concerning the Defendants fourth argument, they argue, without any legal authority, that the shipments are too remote in time. "Remoteness" is generally raised in the context of prior bad act evidence under Rule 404(b), Rule 413, and Rule 414. *See United States v. Lozano*, 623 F.3d 1055, 1059 (9th Cir. 2010). When addressing prior bad act evidence, courts first determine whether the evidence falls within the scope of Rules 404, 413, or 414, and then proceed to determine whether the evidence is more prejudicial than probative under Rule 403's balancing inquiry. *See United States v. LeMay*, 260 F.3d 1018, 1024 (9th Cir. 2001). Remoteness is addressed during the Rule 403 balancing inquiry. *LeMay*, 260 F.3d at 1027-1028. Thus, although the Defendants do not argue the evidence is prior bad act evidence, it is nonetheless appropriate to address the issue of remoteness in a Rule 403 balancing inquiry.

The Court holds the shipments are not too remote. The shipments occurred between February 2012 and December 2012, roughly five to six years ago. Courts have admitted evidence far more remote than that. *See United States v. Ross*, 886 F.2d 264, 267 (9th Cir. 1989) (thirteen years); *United States v. Spillone*, 879 F.2d 514, 519 (9th Cir. 1989) (ten years); *United States v. Meacham*, 115 F.3d 1488, 1495 (10th Cir. 1997) (thirty years). The frequency and routine nature of the

shipments adds to the reliability that the shipments occurred, as does corroborating evidence, such as bills of lading. In sum, five to six years is not that long, and the corroborating evidence minimizes any concern raised by the remoteness in time.

The motion is denied with respect to evidence the Defendants transported natural gas condensate on sixteen occasions from February 2012 through December 2012.

### 2. Evidence that the Defendants falsified a bill of lading and placed it in the truck involved in the explosion

It's unclear whether the Defendants object to the government referring to the bill of lading as false, or if they object to the introduction of the bill of lading itself as irrelevant and prejudicial.

To the extent the Defendants object to the government referring to the bill of lading as false in its opening and closing statements, the motion is denied. The government may refer to matters that it will present as evidence. *See United States v. Monks*, 774 F.2d 945, 955 (9th Cir. 1985). The jury will be instructed the statements of attorneys are not evidence. *Monks*, 774 F.2d at 955.

To the extent the Defendants object to the introduction of the bill of lading as irrelevant and prejudicial, the motion is denied. The bill of lading is relevant to counts 1, 2, 3, and 14 because those counts are premised on the Defendants falsifying the bill of lading. Evidence that the bill of lading is false is prejudicial to the Defendants only in so much as it is highly probative of whether the Defendants

are guilty of a crime. Such prejudice does not rise to the level of "unfair prejudice," much less outweigh the probative value of the evidence. *See Old Chief v. United States*, 519 U.S. 172, 181 (1997) (Unfair prejudice means "an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one.") (internal quotation and citation omitted). The motion is denied.

### 3. Evidence that workers were injured in the explosion and insurance payments were made in connection with the explosion

The Defendants argue evidence of injured workers and insurance payments is irrelevant. The government responds that the evidence shows the Defendants were successful in their scheme. The Defendants reply success is not an element of any count.

The Defendants are correct that success is not an element of the crimes alleged. However, that is not the test for relevance. Evidence is relevant if it makes a fact of consequence more or less probable. Fed. R. Evid. 402. A fact of consequence to, and an element of, counts one and five is that the Defendants' actions were in furtherance of the scheme to defraud Great West. 18 U.S.C. § 371 (requiring an act to effect the object of the conspiracy); *United States v. Woods*, 335 F.3d 993, 997-999 (9th Cir. 2003) (requiring the use of wires to be in furtherance of the scheme). Another fact of consequence to, and an element of,

11

count five is that the object of the Defendants' scheme was the money or property of a victim. *Cleveland v. United States*, 531 U.S. 12, 26-27 (2000). Count one alleges the Defendants conspired to, among other things, defraud Great West. Count five alleges the Defendants committed wire fraud when they submitted a claim to Great West for defense and indemnity against a personal injury lawsuit filed against them by workers injured in the explosion.

Evidence that workers were injured and subsequently filed a claim against the Defendants makes it more likely the Defendants conspired to use, and did use, the wires to further their scheme to defraud Great West. Similarly, insurance payments in response to the Defendants' request for coverage make it more likely the Defendants were intending to defraud Great West. The insurance payments provide the incentive, or motive, for the Defendants' intent to defraud. Finally, the insurance payments make it more likely the object of the Defendants' scheme was the money of Great West. The evidence is relevant.

The Defendants argue that even if the evidence is relevant, its probative value is outweighed by unfair prejudice because it will provoke an emotional response. Evidence of injuries, whether photographic or testimonial, are routinely subject to Rule 403 objections. Assuming the evidence is relevant and probative, such evidence is usually excluded only when it is "of such gruesome and horrifying nature that its probative value is outweighed by the danger of inflaming

the jury." *United States v. Brady*, 579 F.2d 1121, 1129 (9th Cir. 1978). Evidence of insurance payments is similarly subject to routine objections for unfair prejudice. *See Jenks v. Bertelsen*, 86 P.3d 24, 29-30 (Mont. 2004) (citing *D'Hooge v. McCann*, 443 P.2d 747, 750 (Mont. 1968)).

As explained above, the evidence is relevant to at least two counts in the indictment, and highly probative of specific elements of the crimes alleged. However, the evidence is probative only because it shows there was an explosion resulting in injuries, there was a lawsuit, and there were insurance payments. The extent of the damage, injuries, and payments has little probative value. Under Rule 403's balance, the Court holds the government is entitled to put into evidence that there was an explosion resulting in injuries, there was a lawsuit, and there were insurance payments. The government may not put into evidence the extent of the damage, injuries, or payments. The motion is granted in part and denied in part.

### B. Motion to exclude under Rule 802 and Confrontation Clause

The Defendants argue audio and video statements are inadmissible hearsay under Rule 802. The Defendants also argue the admission of analysis results without the analysts present to testify violates the Confrontation Clause under *Melendez-Diaz v. Massachusetts*, 557 U.S. 305, 310-311 (2009).

The Defendants did not provide the Court with the audio and video files that they refer to. Nor did the Defendants provide a summary of the contents of the

audio and video files. Without knowing the contents of the audio and video files, including who the declarant is and the context of the declarant's statement, the Court cannot make a hearsay determination. The motion is denied with leave to renew at trial.

The Court denies the Defendants' Confrontation Clause motion because it is premature. Without being in trial, knowing whether an analyst has or has not testified, the Court cannot determine whether admission of certain evidence violates the Confrontation Clause. If and when the government seeks to admit analysis results at trial, the Defendants may object on any meritorious ground available, including the Confrontation Clause. The motion is denied with leave to renew at trial.

## IV. Conclusion and order

IT IS HEREBY ORDERED:

1. The Defendants' motion in limine under Rules 401, 402, and 403 (Doc. 41) is granted in part and denied in part.

2. The Defendants' motion in limine under Rules 802 and the Confrontation Clause (Doc. 43) is denied with leave to renew at trial.

DATED this 22nd day of January, 2018.

*Susan P. Watters*
SUSAN P. WATTERS
United States District Judge