**W. ADAM DUERK**
**Assistant U.S. Attorney**
**ERIC E. NELSON**
**Special Assistant U.S. Attorney**
**U.S. Attorney's Office**
**P.O. Box 8329**
**Missoula, MT 59807**
**105 E. Pine, 2nd Floor**
**Missoula, MT 59802**
**Phone: (406) 542-8851**
**FAX: (406) 542-1476**
**Email: adam.duerk@usdoj.gov**
**Email: nelson.eric@epa.gov**

**ATTORNEYS FOR PLAINTIFF**
**UNITED STATES OF AMERICA**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
## BILLINGS DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | **CR 17-138-BLG-SPW** |
| **Plaintiff,** | **UNITED STATES' TRIAL BRIEF** |
| **vs.** | |
| **WOODY'S TRUCKING, LLC, and DONALD E. WOOD, JR.,** | |
| **Defendants.** | |

1

The United States of America hereby submits the following trial brief. Defendants Woody's Trucking, LLC and Donald E. Wood, Jr. are proceeding to trial on May 14, 2018 in Billings, Montana.  The Defendants are charged in the Indictment with one count of Conspiracy in violation of 18 U.S.C. § 371; three counts of Wire Fraud in violation of 18 U.S.C. § 1343; one count of Mail Fraud in violation of 18 U.S.C. § 1341; three counts of reckless Transportation of Hazardous Materials without Placards in violation of 49 U.S.C. § 5124(d); three counts of reckless Transportation of Hazardous Materials without Proper Shipping Papers in violation of 49 U.S.C. § 5124(d); and one count of Obstruction of Justice in violation of 18 U.S.C. § 1519. Each count is accompanied by an allegation of aiding and abetting the same in violation of 18 U.S.C. § 2.

The United States anticipates calling approximately 30 witnesses and introducing 150 exhibits (with sub-parts) during the trial. The trial should last 8 trial days.

**Facts:**  Woody's Trucking is a commercial transportation business managed and owned by Donald E. Wood, Jr. In 2004, Woody's Trucking obtained a commercial insurance policy from Great West Casualty Company. The Great West policy renewed annually. Prior to each renewal, Woody's Trucking submitted to

Great West an insurance application which listed the commodities transported by Woody's Trucking and whether any were hazardous.

In February 2012, Woody's Trucking entered into an agreement with Saddle Butte Pipeline, LLC, to transport natural gas condensate, a material known to both Saddle Butte and Woody's to be volatile, flammable, and hazardous. At the same time, Woody's Trucking obtained an endorsement from Great West to add Saddle Butte as an insured party to the existing policy. Woody's Trucking did not disclose to Great West that it had begun transporting natural gas condensate or hazardous materials.

In October 2012, Woody's Trucking submitted its annual insurance application to Great West. The October 2012 application stated Woody's Trucking transported "KCL Water," "100%." The October 2012 application did not state Woody's Trucking transported hazardous materials. Based upon the October 2012 application, Great West renewed Woody's Trucking's policy.

From February 2012 through December 29, 2012, Woody's Trucking transported natural gas condensate for Saddle Butte. Woody's Trucking did not receive and/or prepare hazardous material shipping papers, hazardous material placards, or emergency response information for any of the transports. Donald E.

3

Wood, Jr. and conspirators instead prepared Bills of Lading that falsely described the materials transported as "slop oil and water."

On December 29, 2012, an explosion occurred while workers unloaded natural gas condensate transported by Woody's Trucking.  Between December 29, 2012, and January 8, 2013, Kelly Steen, an independent owner-operator driving under the authority of Woody's Trucking's motor carrier authority, at the direction of Woody's Trucking, prepared a Bill of Lading that falsely described the contents of the December 29, 2012, transport as "slop oil and water from condensate tanks."

On January 9, 2013, Kelly Steen, at the direction of Woody's Trucking, placed the false Bill of Lading into the cab of the truck that made the December 29, 2012, transport.

On December 31, 2012, Woody's Trucking faxed a claim to Great West for repairs to the truck involved in the explosion. On January 17, 2013, in response to an OSHA investigation, Woody's Trucking faxed a copy of the false bill of lading to OSHA. On October 24, 2014, in response to a request by Great West concerning the explosion, Woody's Trucking and conspirators mailed a copy of the false bill of lading to Great West.

On February 28, 2015, Woody's Trucking emailed to its insurance agent and Great West a complaint and summons filed against Woody's Trucking by

workers injured in the explosion.

Based on the above facts, the indictment charged Woody's Trucking and Donald E. Wood, Jr. with fourteen counts. Count one alleges the Defendants, and other known and unknown to the grand jury, knowingly conspired to: (a) defraud Great West by wire fraud and mail fraud, (b) defraud the United States by deceitfully obstructing the legitimate functions of the DOT and OSHA in enforcing federal law, (c) recklessly violate hazardous materials regulations, and (d) alter a tangible object with the intent to obstruct the OSHA investigation.

Counts two, three, and five allege the Defendants, for the purpose of executing a scheme to defraud, transmitted a wire communication in interstate commerce. Count four alleges the Defendants, for the purpose of executing a scheme to defraud, caused a matter to be deposited, sent, or delivered by United States mail.

Counts six, seven, eight, and nine allege the Defendants recklessly violated Hazmat regulations by transporting and causing to be transported a hazardous material without required placards.

Counts ten, eleven, twelve, and thirteen allege the Defendants recklessly violated Hazmat regulations by transporting and causing to be transported a hazardous material without proper shipping papers.

5

Count fourteen alleges the Defendants knowingly altered, destroyed, and concealed a document with the intent to impede, obstruct, and influence the investigation and proper administration of a matter within the jurisdiction of OSHA.

The fire, and the acts that followed, have resulted in an insurance battle in federal court that has continued for years. In fact, the fight over attorney fees continues to this day. In the first chapter of that ongoing fight -- premised on an effort to minimize or avoid liability for the fire -- the Defendants sought indemnity and defense costs from their insurance company.  But after learning the true cause of the fire, even the defendants' own insurer described these efforts as fraudulent. *See Great West v. Woody's Trucking, LLC,* Cause No. CV-15-81-BLG-SPW (Doc. 1).

**Witnesses:** The government intends to call approximately 30 witnesses at trial. These witnesses can be separated into 8 general categories. These categories are:

### *Victim witnesses /CCP employees, consultant, and manager(6)*

Four  witnesses who were employed by Custom Carbon Processing (CCP) are expected to testify, along with an electrician from Wyoming who helped design and build the CCP facility in Wibaux, Montana. Three of the CCP employees were

6

injured in the explosion. Collectively, four CCP employees will testify about the physical plant that was destroyed as a result of the fire and the history of acceptance of drip gas from the Saddle Butte facility. They will also testify about special procedures involving acceptance of shipments of "drip gas," the extremely hazardous material offloaded from the Defendants' trailer the day of the fire. Finally, several of these witnesses will testify about what they observed during conversations with the Defendants or employees of Woody's Trucking that indicated defendants' knowledge that they were hauling hazardous "drip gas" – not "KCL water" or "slop oil" as described in insurance applications, or a bill of lading from the day of the fire.  The electrician is expected to testify that he was aware that CCP was accepting shipment of drip gas, that it was dangerous to add drip gas into the slop oil processing operations he had helped design, and that he was called by a CCP employee immediately after the explosion.  Finally, a former manager for the Canadian-owned CCP business is expected to testify about the arrangement between Saddle Butte, Woody's Trucking and CCP to accept shipments of drip gas from Saddle Butte, and the Defendants' awareness that the drip gas material was hazardous.

### *Saddle Butte Pipeline Manager (1)*

The former operations manager for the former Saddle Butte Pipeline Little Missouri Gas Processing Plant located in Watford City, North Dakota, will testify about that facility's generation of "drip gas" or "natural gas condensate" in two atmospheric tanks located at the facility referred to as condensate tanks.  He will also testify about the arrangements Saddle Butte made with CCP and the Defendants to transport the drip gas and other contents in the tanks to CCP facilities in Sidney, Montana and Wibaux, Montana.  He will testify that based on his observations, the hazardous nature of the drip gas was known to the Defendants and CCP.  He will also testify about sending a Material Safety Data Sheet describing the hazards and DOT shipping requirements for "natural gas condensate, petroleum" to Wibaux Fire Department officials after the explosion on December 29, 2012.

### *Kelly Steen – Former Truck Driver for Woody's Trucking (1)*

Kelly Steen will testify that he transported shipments of natural gas condensate from Saddle Butte to CCP's Wibaux facility on four occasions in November 2012. Steen will also testify that he transported the shipment of natural gas condensate on December 29, 2012 that exploded during offloading of the material into the CCP facility.  Mr. Steen will testify that he and the Defendants

were aware that the natural gas condensate being picked up from Saddle Butte was hazardous, and that, at the direction of the Defendants, he transported these shipments without receiving or affixing hazardous flammable placards on his vehicle, and without receiving or preparing hazardous materials shipping papers properly describing the hazardous material.

Mr. Steen will further testify that, during the time between the December 29, 2012, explosion and about January 9, 2012, the date that the Defendants were allowed back onto the CCP facility, he was directed by the Defendants to place a bill of lading into the cab of his truck falsely describing the material he transported as "slop oil and water from condensate tanks."

Mr. Steen previously pled guilty to one charge of transporting hazardous material without placards.  Mr. Steen cooperated with the government and was provided the benefit of a plea agreement in return that acknowledged his substantial assistance to the government through a lower sentencing recommendation.  Defense counsel has received a copy of this plea agreement. Mr. Steen's transcript of his grand jury testimony has, likewise, been shared with defense.

### *First Responders (6)*

This category of witnesses includes individuals from the Wibaux Fire Department and the Montana Department of Emergency Services that were some of the first on the scene. These individuals will testify about what they observed while the fire was still burning and immediately afterwards, and conversations they had with Woody's Trucking and CCP representatives. The Fire Department witnesses are expected to testify that the truck delivering the drip gas did not have hazard placards affixed to the vehicle or proper hazardous materials shipping papers that would normally be expected when responding to a hazardous materials transportation incident to assist them in their emergency response activities. The number of emergency response witnesses may be reduced if stipulations regarding foundation and admission of photographs can be reached with the Defendants.

### *Woody's Trucking Employees (3)*

This category of witnesses includes individuals employed by the defendant's company. The government intends to call these witnesses as hostile and/or witnesses identified with an adverse party. Pursuant to FRE 611(c), the government intends to use leading questions with each of these witnesses to ensure a clear record, as explained below.

### *Insurance Representatives (6)*

This category of witnesses includes individuals employed by Stieg and Associates and Great West Insurance, the insurance broker and insurer for Woody's Trucking, LLC.

### *Government Agency Witnesses (6)*

This category of witnesses includes four OSHA witnesses. Two of the OSHA witnesses will testify about OSHA's investigation into the explosion, the collection of samples from Kelly Steen's truck trailer, and the receipt of the faxed falsified bill of lading to OSHA's office. Two OSHA analysts will also provide expert testimony regarding their analysis of the samples collected from Kelly Steen's truck to determine the "flash point" and chemical constituents of the gas condensate hauled by Woody's Trucing, LLC.

In addition to the OSHA witnesses, the government expects one Department of Transportation OIG Special Agent and one EPA Special Agent to testify regarding documents received during the course of the investigation and statements by the Defendants or Woody's employees during the course of the investigation.

### *Rebuttal Expert Witness*

Defendants provided expert witness disclosures for three experts (Docs. 60, 101), and filed a motion, without objection from the government, to allow

11

"Defendants' Expert Witness" to be present in the Courtroom during the trial prior
to his testimony.  (Docs. 48, 57). The court granted this motion (Doc. 84). It is
unclear which of the Defendants' three experts that the Defendants are requesting
to be present, but their experts include an expert in the field of hazardous materials
transportation regulations (Albert Calkins).

As noted in Doc. 60, the government is not calling a hybrid expert witness to
testify about legal/regulatory issues in its case-in-chief, but reserved the right to
call a regulatory expert in rebuttal, if necessary. The government hereby requests
that an expert from the U.S. Department of Transportation also be allowed to be
present during the trial and testify as a rebuttal expert witness regarding hazardous
material transportation issues to the extent authorized by the Court.

### *Special Witness Issues*

The government notes that there are several witnesses that fall into the
hostile/adverse witness category pursuant to Rule 611(c)(2). Leading questions are
permitted with an adverse witness or a witness identified with an adverse party.
FRE 611(c)(2). The discretion to determine whether a witness is "adverse" rests
with the trial judge. *Goings v. United States*, 377 F.2d 753 (8th Cir. 1967). Certain
witnesses are even presumed to be hostile – a category of witnesses that has

12

significantly enlarged over time. *See Ellis v. City of Chicago*, 667 F.2d 606,612-13 (7th Cir. 1981).

The government anticipates that it will call witnesses who fall into these categories during its case-in-chief. The government will ask the Court to permit the use of leading questions with these witnesses for the reasons set forth below.

Angela Schallenberger: This witness is the daughter of the Defendant and a current employee of the Defendants. Witnesses who fall into the category of family member/employee or personal acquaintance are properly considered as identified with an adverse party. Case law has established that if the witness has a personal relationship such as a colleague, friend or family member of the defendant, courts have allowed leading questions. *United States v. Hicks*, 748 F.2d 854 (1984). If the witness has a prior professional relationship with the defendant, leading questions are appropriate as well. *Stahl v. Sun Microsystems, Inc.,* 775 F. Supp. 1397, 1398 (D. Colorado 1991) (leading questions appropriate with former employee of defendant who remained closely identified with defendant even after employment relationship); *Haney v. Mizell Memorial Hosp.*, 744 F.2d 1467, 1477-78 (11th Cir. 1984) (noting that professional relationships affect adverse party status and that a witness employed by the defendant at the time the conduct occurred should have been identified with an adverse party).

13

Furthermore, Ms. Schallenberger has not been entirely cooperative with the government (as is her right) as far as agreeing to meet for interviews. Additionally, the government believes Schallenberger may have participated in several acts in furtherance of the defendant's scheme in this matter. Case law has established that if the witness's interests are aligned with the defendant, Courts have likewise considered the witness "adverse" and have allowed leading questions. *Chumbler v. Alabama Power Co. Inc.,* 362 F.2d 161 (5th Cir. 1966) (noting that the determination for an adverse party is whether the witness could have been "sued" or named as a defendant or co-defendant). *See also Journeymen Plasterer's Protective and Benev. Soc. Of Chicago, Local No. 5 v. N.L.R.B.,* 341 F.2d 539 (7th Cir. 1965) (trial court did not abuse discretion by allowing leading questions when witness exhibited alignment of interest with party). For these reasons, the government intends to use leading questions with this witness during its direct examination.

<u>Mark Hurst</u>: This witness is a co-defendant in a related case, *United States v. Custom Carbon Processing, Inc., Mark Hurst and Peter Margiotta* CR-17-143-BLG-SPW. Although Mr. Hurst has been granted immunity for his testimony at trial, he has not entered into a plea agreement with the government. Therefore,

based on the case law set forth above, the government intends to use leading questions during direct examination of Mr. Hurst as well.

Heather Kallevig: This witness is a current employee of the Defendants and a personal friend of members of the Defendant's family. For these reasons, based on the legal analysis above, the government intends to use leading questions with Ms. Kallevig for the same reasons as Ms. Schallenberger.

Kelly Steen: This witness was a defendant in a related case, *United States v. Kelly Steen*, CR- 14-111-BLG-SPW. Mr. Steen was the truck driver that delivered natural gas condensate to the CCP facility on the day of the explosion. Mr. Steen entered into a plea agreement with the United States, pleading guilty to a placarding violation for failing to have placards on his vehicle that accurately described the nature of natural gas condensate. Although Mr. Steen did cooperate with the government to receive the benefit of the plea agreement, that agreement is now complete as Mr. Steen has already been sentenced. It is well-established that a Court can permit leading questions with a co-conspirator called by the government during its case in chief who has received the benefit of a cooperation agreement. *United States v. Hernandez Albino*, 177 F.3d 33, 42 (1st Cir. 1999): *see also United States v. Diaz*, 662 F.2d 713, 718 (11th Cir. 1981).

Mr. Steen's interests remain adverse to the United States as a former defendant, employee of Woody's and personal friend of the Defendant, Donald E. Wood, Jr. For these reasons, the United States intends to treat Mr. Steen as a party identified with an adverse witness at trial insofar as the use of leading questions is concerned.

Shawn Rost: Mr. Rost requested, and was granted immunity prior to his witness interview in this matter.

**Evidence:**    The evidence in this trial, in addition to the testimony from the witnesses mentioned above, includes an exhibit list containing 146 exhibits (a few with subparts). These exhibits include photographs and videos of the scene of the explosion; insurance applications and policies; shipping paperwork generated by Woody's Trucking, LLC; email correspondence; receipts, invoices, checks and financial paperwork; contracts and agreements; company policies, procedures and manuals; legal documents related to the underlying civil case, and other miscellaneous exhibits.

The exhibit list was forwarded to defense counsel on Friday, May 4, 2018. At this time, the government does not know what exhibits, if any, the defense intends to use at trial. The government has invited stipulations regarding all of its

16

exhibits in an attempt to avoid the need for custodial witnesses and to streamline the presentation of evidence in this case.

Regarding evidentiary issues, the government does not anticipate any extraordinary evidentiary issues arising at trial beyond the issues raised and resolved by Orders of the Court (See "Other Legal Issues" Chart, *infra.*). However, there are two matters that bears mentioning here.

***(1) Subpoena for Original Bills of Lading:*** On Tuesday, May 1, 2018, the government served a subpoena commanding Don Wood or a representative for Woody's Trucking to bring the original Bills of Lading and other associated documents to trial on May 15.  The government asked defense counsel to acknowledge receipt of service and acceptance of service of the subpoena. After repeated attempt to verify that defense counsel had received the subpoena, defense counsel responded on Friday night at 8:26 PM in a one-sentence e-mail from Attorney Laughner: "We do not accept service of the subpoena." On Saturday, May 5, the government asked defense counsel to cite any rule or case law that supported their position. Ms. Laughner responded on Monday, May 7: "I am aware of Rule 17(d). Is there another rule we might be missing?" In the meantime, the government served the Defendant personally in Baker, Montana.

In the absence of the production of the original Bills of Lading responsive to the government's subpoena, the United States will seek to introduce evidence of the non-production of the records requested. Furthermore, the government may seek a jury instruction on this point at trial.

### (2)  Burn Photograph of Josh Garrison

The court ordered that the government may offer evidence that there was an explosion resulting in injuries, there was a lawsuit, and there were insurance payments.  (Doc. 88 at 13).  However, the government may not put into evidence the extent of the damages, injuries, or payments.  *Id.*

The government respectfully seeks to offer limited photographic evidence of Josh Garrison's facial burn injuries, consistent with the Court's order, for the purpose of showing evidence that there was an explosion resulting in injuries, and not for the purpose of showing the extent of Mr. Garrison's injuries. Moreover, the government would offer these photos for the separate purpose of providing evidence that the natural gas condensate being offloaded on December 29, 2012 exhibited hazardous characteristics similar to those described in the Material Safety Data Sheet later provided by Saddle Butte after the explosion. A single photograph of Mr. Garrison's facial burns would help corroborate his expected testimony that, as he was offloading the material, volatile vapors emanated from

18

the material and spread throughout the facility. He will also testify that he observed

a flame traveling back to his location immediately prior to the explosion, which

resulted in his injuries. Such limited use of a single burn photograph should be

allowed under the Court's previous ruling under Fed. R. Evid. 403, because it is

offered as proof of the explosion and resulting injuries. It is also as relevant

circumstantial evidence that the natural gas condensate was a hazardous material,

and displayed similar hazardous properties as those identified in the Material

Safety Data Sheet.

   **Legal Issues:**  The government has charged the defendant with the

following crimes in the Indictment:

## <u>CONSPIRACY</u>

Count 1 alleges a conspiracy in violation of 18 U.S.C. § 371. The elements

that must be proven beyond a reasonable doubt at trial are:

   **First**, beginning on or February 2012, and continuing until on or about
   February 28, 2015, there was an agreement between two or more persons to
   commit at least one crime as charged in the indictment;

   **Second**, the defendant became a member of the conspiracy knowing of at
   least one of its objects and intending to help accomplish it; and,

   **Third**, one of the members of the conspiracy performed an overt act within
   five years from the date of indictment, for the purpose of carrying out the

conspiracy.[1]

## **WIRE FRAUD**

Counts 2, 3 and 5 allege wire fraud in violation of 18 U.S.C. § 1343. The elements that must be proven beyond a reasonable doubt are:

**First**, the defendant knowingly participated in, devised, and intended to devise a scheme or plan to defraud, or a scheme or plan for obtaining money or property by means of false or fraudulent pretenses, representations, or promises;

**Second**, the statements made or facts omitted as part of the scheme were material; that is, they had a natural tendency to influence, or were capable of influencing, a person to part with money or property;

**Third**, the defendant acted with the intent to defraud, that is, the intent to deceive or cheat; and,

**Fourth**, the defendant used, or caused to be used, a wire communication to carry out or attempt to carry out an essential part of the scheme.

## **MAIL FRAUD**

Count 4 alleges mail fraud in violation of 18 U.S.C. § 1341. The elements that must be proven beyond a reasonable doubt are:

**First**, the defendant knowingly [participated in] [devised] [intended to devise] a scheme
or plan to defraud, or a scheme or plan for obtaining money or property by means of false or fraudulent pretenses, representations, or promises;

---

1 See Jury Instructions for actual elements. These elements are intended as a summary, only.

**Second**, the statements made or facts omitted as part of the scheme were material; that is,
they had a natural tendency to influence, or were capable of influencing, a person to part with
money or property;

**Third**, the defendant acted with the intent to defraud; that is, the intent to deceive or
cheat; and

**Fourth**, the defendant used, or caused to be used, the mails to carry out or attempt to
carry out an essential part of the scheme.

## <u>RECKLESS TRANSPORTATION OF HAZARDOUS MATERIALS</u>

Count 6-9 and 10-13 allege Reckless Transportation of Hazardous Materials

without Placards and Shipping Papers in violation of 49 U.S.C. § 5124 and 5110.

The elements that must be proven beyond a reasonable doubt under 49 U.S.C. §

5124 are:

**First,** the defendant violated hazardous materials  regulations (governing
placards with respect to Counts 6-9, and governing shipping papers with respect to
Counts 10-13);

**Second**, the defendant did so recklessly.

The government's proposed jury instructions regarding the Hazardous

Materials Transportation Act offenses alleged in Counts 6-13 provide detailed

instructions regarding relevant terms necessary for the jury to determine whether

the elements of the offenses are met, including the definition of "hazardous material;" the definition of "Class 3 Flammable Liquid;" the placarding and shipping paper requirements set forth in the applicable hazardous materials regulations; and a definition of "reckless" mental state.

## OBSTRUCTION OF JUSTICE

Count 14 alleges Obstruction of Justice, Destruction, Alteration or Falsification of Records in Federal Investigations in violation of 18 U.S.C. § 1519. The elements that must be proven beyond a reasonable doubt are:

**First**, the defendant knowingly falsified a document;

**Second**, the defendant did so with the intent to impede, obstruct, or influence the investigation of the proper administration of any matter or in contemplation of or in relation to any such matter; and

**Third**, the matter was within the jurisdiction of the United States.

As a general matter, physical evidence admitted by the prosecution is subject to the requirement that the object has not been changed in an important respect. *United States v. Ballesteros*, 71 F.3d 754, 768-69 (9th Cir. 1995). The government is also required to show the chain of custody of seized evidence. *United States v. Harrington*, 923 F.2d 1371, 1374 (9th Cir. 1991). In establishing the chain of custody of an article, the prosecution, however, is not required to present the testimony of every witness who handled it, including the evidence custodian. *Id*.

There is a presumption that public officers properly discharge their duties with respect to such evidence. *Id*. Merely raising the possibility of tampering with an article of evidence is not sufficient to render it inadmissible. *Id*. Ultimately, the possibility of a break in the chain of custody goes only to the weight, not the admissibility of the evidence. *Id*.

The indictment contains a criminal forfeiture allegation as well. The monetary losses in the forfeiture verdict are related to the sums paid by Great West Insurance company that were the result of defendant's fraudulent conduct, i.e. amounts paid to the plaintiffs in the civil action in settling the case as well as amounts paid for other losses of equipment, costs of suit and attorney fees.

## <u>OTHER LEGAL ISSUES</u>

There were several motions *in limine* filed in this matter. Without reciting the entire analysis corresponding to each motion, a brief summary of the Court's Orders is referenced below.

| Doc. # | Issue and Disposition |
|---|---|
| 84 | **Granted:** Defense motion allowing experts to Remain in Courtroom |
| 88 | **Denied:** Defense motion that Defendant transported natural gas condensate. Government may introduce evidence that Defendants transported natural gas condensate on sixteen occasions.<br>**Denied:** Defense motion prohibiting government from admitting evidence that Defendant placed a falsified Bill of Lading in the truck involved in the explosion. Government may enter said evidence and reference bill of lading |

| | |
|---|---|
| | as false in opening statement. **Granted:** Defense motion prohibiting the government from putting into evidence <u>the extent</u> of the damages, injuries or payments related to the injured workers. No such evidence may be admitted. |
| 109 | **Granted in part:** Government motion to exclude legal opinions of Defense experts Calkin and Richmond. <u>**Calkin**</u> may testify that the industry standard is that shippers usually assume various responsibilities. Calkin may not testify that the law solely obligates shippers to comply with Hazmat regulations as these regulations obligate both shippers and carriers to comply with the regulations. Calkin may not opine that Defendants' obligation to comply with Hazmat rgulations was removed. Cross examination is the appropriate method to expose flaws or contradictions in the materials relied on by Calkin regarding his opinion that defendants relied on shippers' representations. Calkins may not testify regarding Defendants' mental state. <u>**Richmond**</u> may testify about jargon used in the oil field. Richmond may not testify that he agrees with the Montana Board of Oil and Gas Conservation that no criminal activity was suspected in this case. |
| 116 | **Denied:** Defendant's motion to exclude dual role witnesses. The Government's Dual role witnesses are permitted to testify with an appropriate jury instruction. **Denied:** Defendants' motion for Judicial Notice of website definitions. The government's cross motion is likewise denied. |

Pursuant to the hearing held on Friday, May 4, 2018, as well as the representations made by defense counsel in open court, the government understands that counsel has obtained knowing, voluntary and intelligent consent from their current and former clients related to any actual or potential conflicts of interest, and that the Defendants have waived the defenses of alibi, advice-of-counsel, and any *mens rea* defense consistent with the analysis found in *United States v. Gorski*, 36

F.Supp.3d 256 (D. Mass. 2014). Furthermore, the government anticipates that witnesses Angela Schallenberger and Heather Kallevig will obtain separate legal counsel who will be present at trial. The government has not had contact with either witness related to these matters and will assume that she has received appropriate legal advice from their lawyers before taking the stand.

All remaining legal and evidentiary issues will be addressed through proper objection or notice at the time of trial.

DATED this 7th day of May, 2018.

KURT G. ALME
United States Attorney

*/s/ W. Adam Duerk*
Assistant U.S. Attorney
Attorney for United States

## CERTIFICATE OF COMPLIANCE

Pursuant to D. Mont. LR 7.1(d)(2) and CR 12.1(e), this Trial Brief is proportionately spaced, has a typeface of 14 points or more, and the body contains 4,903 words.

*/s/W. Adam Duerk*
Assistant U.S. Attorney
Attorney for United States